R. McFarland, S. J.,
delivered the opinion of the Court.
The complainant, Trent, had a judgment against the defendant, Robert Kyle, upon which an execution issued and was levied upon a tract of land of Kyle’s, in Hancock county. The land was sold under this execution, on the 24th day of November, 1860, and bought by *664 Trent, for $766.76, the amount of his debt and costs. Kyle made an effort to redeem the land from Trent, with bank notes and Confederate money, but Trent refused to receive the same. Kyle, however, made arrangements with his co-defendant, John W. Phillips, by which the latter agreed to purchase the land for the sum of $5,500. Out of this, Trent’s debt was to be paid, and the balance was to go to Kyle; and this agreement was to be carried out, provided Trent would agree to it, and take Phillips’ note for the amount due him. To this arrangement Trent consented, as he alleges in his bill, under duress, or from fear of Phillips, and, as he alleges, upon condition that the note to be thus taken should be secured upon the land.
On the 24th of December, 1862, a title bond was executed by Kyle, binding himself to convey the land to Phillips, upon the payment of the purchase money. Upon the same day, Phillips executed his note to Trent for $869.10, due the 25th of December, 1863, in currency that “will pay debts in bank or taxes,” with interest from date, this being the amount of his debt and interest; and it is stated in the record, that, upon that day, Trent executed a receipt, acknowledging the satisfaction of his judgment, and releasing his claim upon the land.
Trent files this bill, alleging that he was induced to agree to this arrangement through fear of personal danger from Phillips, and insists that he ought to be released from it altogether, or, if not, that he is entitled to a vendor’s lien for -the amount due him.
Phillips answers, and admits that Trent is entitled to *665 this lien upon the land for the amount of the note; that such was the understanding and agreement. Kyle answers, and asserts that Trent has no lien, but must look alone to Phillips for his debt; and that the lien for purchase money was reserved alone to himself; to enforce which, it seems, another bill, filed by Kyle, is now pending. They neither of them admit the duress charged.
The Chancellor refused relief to the complainant upon the ground of duress, but gave a decree against. Phillips for the amount of the note due complainant; and held, upon the proof, that the title bond should be so reformed as to include complainant’s debt as a lien upon the land; this stipulation having been, in the opinion of the Chancellor, omitted by mistake of the draftsman; and decreed that this sum due the complainant, and the amount due Kyle, should be paid pro rata out of the proceeds of the sale, which seems to have been made in another case. Erom this decree, both the complainants and Robert Kyle appealed.
¥e are of opinion that the Chancellor was correct in refusing relief to the complainant, upon the ground that the contract was entered into under duress. The testimony upon this subject is principally in regard to the violent character of Phillips during the war, and although it may be probable that this fact had some influence upon the complainant’s mind, yet the proof is too general to found a decree upon, as it does not appear that Phillips ever' attempted to gain any undue ad-wantage over the complainant, in regard to this transaction. But we hold that the complainant is entitled to a vendor’s lien upon this land, for the amount due him, *666 upon the facts that appear in this record. It will be observed, that, at the time of the execution of the title bond, by which the land was sold to Phillips, the time for redemption had already expired, and Trent, if he had chosen to insist upon his legal right, could have taken the Sheriff's deed, and been the absolute owner of the land, for it does not appear that he had made any previous agreement extending the right' of redemption, so that Kyle’s rights existed only by the concession of Trent. It is argued that Kyle redeemed the land from Trent with Phillip’s note, and then sold to Phillips, and that the result is, Trent gave np all his legal advantage, with no security but the note of Phillips. Such we think, is not the legal effect of the transaction. Although the bond was executed by, Kyle, it was, in substance, a sale of the land by Trent and Kyle both, and that each was entitled to receive from Phillips his share of the purchase money; Trent his debt and interest, and Kyle the balance; and each would be entitled to the lien retained for this purchase money, in the’ order in which the law would fix their rights, unless the same is clearly changed by the contract; and this, we think, appears from the title bond, without its being reformed. The bond recites that Kyle had sold the land to Phillips for $5,500, payable as follows: $630.90 in hand, the assumption of a debt to Wm. D. Trent, now bid upon the land, of $869.10, to be paid 25th December, 1863; and the further sum of $2,000 due the 25th December, 1863, $1,000 due 25th December, 1864, and $1,000 due the 25th December, 1865; and after describing this land, the bond concludes: “Now, *667 if I shall make the said John W. Phillips a good and lawful title in fee simple, with general warrantee to the foregoing described land, on the receipt of the last payment, then this obligation to be void/’ &c.
Interpreted in the light of the surrounding circumstances, and the situation of the parties, we understand this bond to include, by its terms, the payment of the debt to complainants, as a condition precedent to the making of the title, and that the legal title was retained to secure this debt with the others. The debt is described as part of the purchase money, and the bond expressly says that the title is to be made upon the receipt of the last payment, and, by necessary inference, the previous payments were intended to be 'also executed. Trent’s failure to sign the bond with Kyle cannot have the effect- to defeat him of any right which the law gives him. Had Kyle paid Trent his debt, and Trent chosen to receive the same in satisfaction thereof, and in redemption of the land, then the result contended for by Kyle would follow, although Trent might have received the same in the note of a third party. But Kyle did not transfer Phillips’ note to Trent in redemption ■ of the land, as the argument erroneously assumes. Kyle held no such note. The note was executed directly from Phillips to Trent, and the consideration of the note was Trent’s interest in the land.
The execution of the receipt by Trent, under the circumstances, only had the effect to give his assent to the transaction. If it were necessary to do so, we should be strongly inclined to hold that there is. sufficient evidence in the record to reform the bond, so as to reach *668 the same result. L. M. Jarvis proves that Kyle and Phillips came to him, in the absence of Trent, to have the papers drawn, and stated to him the arrangement that had been made, which was, among other things, that Trent was to take Phillips’ note, but the same was to be secured upon the land; that he intended to so draw the bond, and thought he had done so. And if we were of the opinion that this was not the legal effect of the bond, we would be strongly inclined to hold the omission the mere mistake of the draftsman, and reform it accordingly; but, in the view we have taken, this is unnecessary.
The question remains, is Trent’s debt to have priority over the debts of Kyle out of the sale of the land, or are they to be paid pro rata? As has been seen, we regard Trent and Kyle as joint vendors of the land, and in such a case the purchase money contracted should be paid to them, according to their legal right, as if the owner of a life estate, and the remainder man join in the sale of land for a given sum, but do not specify the share of purchase money due to each; the law fixes their relative shares, giving to the former the proportionate value of life estate, with the balance to the remainder man; or, where two mortgages join in a sale of the mortgaged premises, contracting for a given sum of purchase money, but not specifying how the same should be applied, the law would provide that the mortgagee whose debt was first secured should be first paid, unless this was clearly waived.
In this cause Trent’s rights were clearly fixed, his debt securely fastened upon the - land. Kyle’s right, at *669 most, could only be to have tbe surplus after paying Trent’s debt. This was then the attitude when they join in the sale. This attitude of the parties could of course be reversed and this priority of Trent’s waived by express agreement, but we are of opinion that no such agreement appears in this case; and in the absence of such agreement we hold that the purchase money is secured according to the legal rights of the parties as they existed at the date of the sale, and the complainants’ debt is entitled to priority, and the decree will be accordingly. The costs of this court will be paid by Robert Kyle, and the costs of the court below will be paid out of the sale of lands, except the costs of complainant’s own witnesses; and this will be paid by the complainants, except the costs of the witness, L. M. Jarvis, as we are of opinion that the testimony of the other witnesses was unnecessary and improperly taken.